FILED
CLERK

3:59 pm, Mar 14, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X

NELLY AMAYA,

                    Plaintiff,

          -against-

BALLYSHEAR LLC, GELLER & COMPANY
LLC, DIANA GUBELLI, JANINE WHEATON,
MARIKA SYGMAN, and STEVE
KACZYNSKI, individually,

                    Defendants.

--------------------------------------------------------X

MEMORANDUM OF
DECISION & ORDER
2:17-cv-01596 (ADS)(GRB)

<u>**APPEARANCES:**</u>

**Derek Smith Law Group PLLC**
*Co-Counsel for the Plaintiff*
30 Broad Street, 35th Floor
New York, NY 10004
          By:     Derek T. Smith, Esq.,
                    Kelly L. O'Connell, Esq., Of Counsel

**Tand & Associates PC**
*Co-Counsel for the Plaintiff*
1025 Old Country Road, Suite 314
Westbury, NY 11590
          By:     John Luke, Jr., Esq., Of Counsel

**Willkie Farr & Gallagher LLP**
*Counsel for the Defendants*
787 Seventh Avenue
New York, NY 10019
          By:     Joseph T. Baio, Esq.,
                    Andrew Spital, Esq.,
                    Elizabeth Dunn, Esq., Of Counsel

1

**SPATT, District Judge**:

On March 21, 2017, the plaintiff Nelly Amaya ("Amaya" or the "Plaintiff") commenced this employment discrimination action against her former employers Ballyshear LLC ("Ballyshear"), and Geller & Company LLC ("Geller") (together, the "Corporate Defendants"), as well as various individuals employed by the Corporate Defendants, specifically, Diana Gubelli ("Gubelli"), Janine Wheaton ("Wheaton"), Marika Sygman ("Sygman"), and Steve Kaczynski ("Kaczynski") (together, the "Individual Defendants" and collectively with the Corporate Defendants, the "Defendants"). The Plaintiff alleges gender, race and national origin-based employment discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("§ 1981"), and New York Executive Law § 296 ("NYSHRL").

Presently before the Court is a motion by the Defendants, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6), seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.

For the following reasons, the Defendants' motion to dismiss is granted in part and denied in part.

## I. BACKGROUND

### A. THE FACTUAL BACKGROUND

Unless otherwise noted, the following facts are drawn from the Plaintiff's complaint, and for the purposes of the instant motion, are construed in favor of the Plaintiff.

### 1. The Parties

The Plaintiff is an Ecuadorian woman and member of the Hispanic race. First Amended Complaint ("Compl."), Docket Entry ("Dkt.") 20, ¶ 8. Amaya resides in Southampton, New York and is authorized to work in the United States. *Id.* ¶ 8, 41.

Geller is a New York based business which provides various financial advisory, accounting, and wealth management services for high net worth individuals and businesses. One of Geller's clients is Michael R. Bloomberg ("Bloomberg"), who utilizes Geller to, among other things, manage his various properties. *Id.* ¶¶ 9-10.

Ballyshear is a Geller-affiliated company that manages one of Bloomberg's private residences, a property located in Southampton, New York (the "Property"). *Id.* ¶ 11. Both Gubelli and Wheaton are alleged to be employees of both Ballyshear and Geller. Gubelli is allegedly a partner at Geller and an Executive for Ballyshear. Wheaton is allegedly a Human Capital Business Partner at Geller and a Human Resource Supervisor for Ballyshear. *Id.* ¶¶ 12-14. Sygman is the House Manager at the Property and the Plaintiff's direct supervisor during the course of her employment. *Id.* ¶¶ 16, 44. Kaczynski is the Outside Manager of the Property. *Id.* ¶ 18. The Plaintiff alleges that Kaczynski and Sygman were engaging in a consensual sexual relationship during the relevant time period. *Id.* ¶ 49.

### 2. The Facts

The Plaintiff was hired as a housekeeper for the Property in November 2014. *Id.* ¶¶ 36, 37. She began work in that capacity in or about December 8, 2014. *Id.* ¶ 38. According to the complaint, Jennifer Roldan ("Roldan"), and Josephine Barrera ("Barrera") were also employed as housekeepers at the Property with the Plaintiff. *Id.* ¶ 55.

The Plaintiff worked as a housekeeper at the Property from approximately December 8, 2014 until April 25, 2015.  *Id.* ¶ 101.  During that time, she alleges that Kaczynski, Sygman and her co-workers engaged in a series of behaviors that subjected her to discrimination on the basis of her race, national origin, and gender.  Amaya further alleges that the Individual Defendants retaliated against the Plaintiff in various forms for reporting the offensive behavior.

According to the complaint, during her approximately five-month employment, Kaczynski and Sygman made a series of offensive race or national origin-based remarks either to her or in her presence.  In early December 2014, Kaczynski purportedly referred to the Plaintiff as an "illegal [immigrant]," and stated to the Plaintiff that "Spanish people all come here and have babies so they can stay in this country."  *Id.* ¶ 42.  Shortly after, the Plaintiff complained to Sygman that Kaczynski's comment deeply offended her.  Sygman responded by informing the Plaintiff that Kaczynski was justified for inquiring as to her immigration status, remarking that, "everyone has to have papers in order to work at the [Property]."  Sygman allegedly further noted that Kaczynski meant no harm because he was a "really good" person.  *Id.* ¶¶ 43-47.

In January 2015, Roldan, one of the Plaintiff's coworkers, allegedly stated to the Plaintiff that her husband did not appear to be Ecuadorian, because "Ecuadorians were all short and [had] dark skin."  *Id.* ¶ 59.  In or around the same time, the Plaintiff also alleges that Sygman posted a sign on the Property when Hispanic painters, presumably employed by a contractor, were employed on-site.  The sign read, "do not drink water from the house."  Allegedly, this sign was not posted when white contractors were hired to work on the property.  Amaya claims that Sygman allowed white contractors to drink water from the Property and were offered food and drink.  *Id.* ¶ 54.

Later that year, in or about March 2015, the Plaintiff overheard Kaczynski's conversation with Roldan. Amaya overheard Kaczynski remark that Spanish-speaking people "take our jobs," and "money from our pockets." Roldan allegedly responded, in substance, that Ecuadorian and Mexican women only came to America to reproduce. *Id.* ¶ 85. On another occasion, after the Plaintiff's husband was hospitalized, Kaczynski allegedly commented that Spanish-speaking individuals routinely left medical bills unpaid. *Id.* ¶ 88.

The Plaintiff further alleges that Kaczynski, Sygman and her co-workers engaged in a series of behaviors that subjected her to discrimination on the basis of her gender. On multiple occasions, Roldan and Barrera asked the Plaintiff about her sexual experiences and inquired of the Plaintiff if she and her husband were interested in "swinging." *Id.* ¶ 58. Amaya asserts that Roldan and Barrera regularly engaged in conversations of a sexually explicit nature around the Plaintiff, including details of Roldan and Barrera's past sexual relationships and masturbation habits. *Id.* ¶¶ 55-56. Kaczynski often joined in these conversations. *Id.* ¶ 63. In at least one instance, Kaczynski referred to his co-workers' breasts as "tits" and "boobies" in the presence of the Plaintiff. *Id.*

When the Plaintiff demanded that Kaczynski, Roldan and Barrera stop such conversations, the nature of the conversation allegedly became more offensive. *Id.* ¶ 61. On one occasion, in or about March 2015, Roland and Barrera discussed a sexual fantasy involving a male employee in the presence of Sygman and the Plaintiff. *Id.* ¶ 80. Sygman dismissed the Plaintiff's complaints as "harmless." *Id.* ¶ 81. In another instance that month, the Plaintiff overheard Sygman and Kaczynski discuss an arrangement to have sexual intercourse on the Property. *Id.* ¶ 82. Later that day, Sygman purportedly yelled to the Plaintiff, "no questions, Nelly" when the Plaintiff attempted to greet Sygman.

The complaint also references a former Hispanic housekeeper who allegedly resigned prior to the Plaintiff's employment. "Darleen," as she is referred to, was allegedly mistreated by Sygman and reported the behavior to human resources. The Plaintiff became aware of this prior instance from her co-worker, Roldan. *Id*. ¶ 66.

On April 25, 2015, the Plaintiff overheard Kaczynski inquire as to Sygman's whereabouts. One of the Plaintiff's coworkers remarked to Kaczynski, "your bitch is not here." He responded, "I don't care, I have three bitches here," presumably referring to the Plaintiff, Barrera and Roldan, who were in the same room as Kaczynski. *Id*. ¶ 101. The Plaintiff immediately complained to Sygman about the comment, and was told that Kaczynski's behavior was unlikely to change. Sygman allegedly remarked, "I can't shut people's mouth … I cannot change people … If you guys are not happy, resign now … I can't fire people because they have a bad mouth." *Id*. ¶¶ 103-06. Later that day, the Plaintiff overheard a sexually explicit conversation between Roldan and Barrera. While leaving the room, she "blacked out" and slipped down a staircase on the Property. *Id*. ¶¶ 107-10.

Amaya alleges that she suffered a concussion, a bruised face, a shoulder injury, and a back injury as a result of her fall. She was unable to return to work, but continued to receive a salary for eight weeks after her injury, although it was significantly lower than her regular salary.

Prior to the Plaintiff's fall, she reported the alleged behavior to her superiors on multiple occasions. In February 2015, the Plaintiff allegedly reported to Sygman "about the unlawful comments and conduct of [Kaczynski], Roldan, and Barrera." Sygman responded that the owner of the property, Bloomberg, "would not entertain such nonsense." The next day, Sygman conducted one-on-one meetings with each staff member and held a staff meeting to discuss grievances. At the staff meeting, Sygman allegedly requested that employees complete paperwork

for human resources, which the Plaintiff claims was never forwarded to human resources. *Id.* ¶¶ 68-73.

The Plaintiff alleges that Sygman retaliated against the Plaintiff by falsely reporting to human resources that the Plaintiff was causing problems at the Property and demanding that the Plaintiff perform demeaning tasks not typically performed by housekeepers. Shortly after the February 2015 staff meeting, the Plaintiff overheard Sygman on the speakerphone with an executive, who asked, "is Nelly still causing problems?"

In March, the Plaintiff informed Roldan that she was contemplating reporting her situation directly to human resources. Presumably, Roldan informed Sygman of the Plaintiff's intentions because soon after, Sygman held another staff meeting. At that meeting, she commented, "if anyone goes to [human resources], see how far you fly when [Bloomberg] kicks your ass out the door." Sygman further informed the Plaintiff that if she followed through on filing her complaint to human resources, Sygman would personally fire her. *Id.* ¶¶ 94-96.

In May 2015, after the Plaintiff's fall on the Property, she met with Gubelli and Wheaton at the Defendants' New York City office. During this meeting, she allegedly reported the details of the incidents that occurred during the course of her employment, including the complaints that were filed with Kaczynski and Sygman and their responses to her complaints. The Plaintiff brought recordings of unspecified conversations that were allegedly representative of these incidents and played them for Wheaton and Gubelli. Amaya informed Wheaton and Gubelli that "her doctor did not know if she would recover from the fall and the psychological damage she suffered at the [Property], and that she was eager to return to work but wanted [the] Defendants to treat her with respect and fairly." *Id.* ¶¶ 115-21.

After the meeting, Wheaton "routinely" contacted the Plaintiff to inquire as to the status of her injuries from her fall. On August 12, 2015, Ballyshear sent her a letter notifying her that her short term disability had expired and inquiring as to her ability to return to work. The letter also informed the Plaintiff that if she required continued medical leave, she needed to provide documentation from her healthcare provider. The Plaintiff responded to the letter and informed the Defendants that her doctor was unsure when she would be able to return to work, and that she had scheduled an appointment with her physician for late August. The Defendants asked the Plaintiff to forward any information she received at that appointment to the Defendants. Both parties agree that the Plaintiff did not forward to the Defendants any requested medical information between August 12, 2015 and September 3, 2015. *Id.* ¶¶ 122-24; Declaration of Andrew Spital ("Spital Decl."), Ex. A.

On September 3, 2015, the Corporate Defendants sent the Plaintiff a letter (the "Termination Letter"), which alleged that the Plaintiff failed to provide the Defendants with the requested medical information and had informed them that she did not wish to return to work. "Under the circumstances, and in light of your unwillingness or inability to provide us with any information whatsoever concurring [*sic*] when (if ever) you might be able to return to work, we have no choice but to terminate your employment effective immediately." Spital Decl., Ex. A. The Termination Letter was signed by Gubelli. The Plaintiff alleges that she was terminated because "she opposed discriminatory behavior." Compl. ¶ 125.

The Plaintiff alleges that she continues to experience physical and psychological injuries as a result of her fall at the Property. *Id.* ¶¶ 134-138.

On these facts, the Plaintiff alleges causes of action based on hostile work environment, wrongful termination, pattern & practice, retaliatory discharge, constructive discharge and retaliatory workplace in violation of § 1981, Title VII, and NYSHRL.

## B.  THE RELEVANT PROCEDURAL HISTORY

On May 4, 2016, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (the "EEOC Charge"), alleging discrimination based on sex, national origin, disability and retaliation.  The EEOC failed to find that the Defendants violated any of the statutes at issue.

On March 21, 2017, the Plaintiff commenced this action by filing a complaint in this Court. The first amended complaint set forth six causes of action, namely: (1) discrimination under Title VII against the Corporate Defendants; (2) retaliation under Title VII against the Corporate Defendants; (3) discrimination under NYSHRL against the Corporate Defendants and the Individual Defendants; (4) retaliation under NYSHRL against the Corporate Defendants and the Individual Defendants; (5) aiding and abetting under NYSHRL against the Corporate Defendants and the Individual Defendants; and (6) discrimination and retaliation under § 1981 against the Corporate Defendants and the Individual Defendants.

On September 22, 2017, the Defendants moved under Rule 12(b)(6) to dismiss the complaint, contending that the Plaintiff's allegations, even if taken as true, fail to plausibly state claims upon which relief can be granted.

## II.  DISCUSSION

## A.  STANDARD OF REVIEW: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of

the Plaintiff.  *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bold Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  The Second Circuit has expounded that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss.  FED. R. CIV. P. 8(a)(2).  Under Rule 8, a complaint is not required to allege "detailed factual allegations."  *Kendall v. Caliber Home Loans, Inc.*, 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555).  "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting

*Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## B. CONSIDERATION OF MATERIALS OUTSIDE THE COMPLAINT

The Defendants attached three documents to their motion to dismiss: (1) the Termination Letter, addressed to the Plaintiff, dated September 3, 2015; (2) the EEOC Charge; and (3) the EEOC's dismissal of the Plaintiff's EEOC charge (the "EEOC Dismissal"). *See* Spital Decl. As a preliminary matter, the Court must first address whether these materials may be properly considered by the Court for the purposes of adjudicating this motion.

"[F]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Giugliano v. F3² Capital Partners, LLC,* No. 14-cv-7240, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) (Spatt, J.) (internal citation and quotation marks omitted); *Halebian v. Berv*, 644 F.3d 122, 131 n.7 (2d Cir. 2011) (noting the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In adjudicating this motion, the Court is permitted to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs. v. Recycle Green Servs.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.) (quoting *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003)), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d

25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S. Ct. 1503, 164 L. Ed. 2d 179 (2006)); *accord Healthnow New York, Inc. v. Catholic Health Sys., Inc.*, No. 14-cv-986S, 2015 WL 5673123 (W.D.N.Y. Sept. 25, 2015); *Oberstein v. SunPower Corp.*, No. 07-cv-1155, 2010 WL 1705868, at *3 (E.D.N.Y. April 28, 2010).

The Court will take judicial notice of the Termination Letter as it is integral to the complaint. The Plaintiff alleges that "Defendants terminated [her] because she opposed discriminatory behavior." Compl. ¶ 125. Amaya also specifically mentions the Termination Letter: "Plaintiff's termination letter was also on [Ballyshear] and [Geller] letterhead and signed by [Gubelli]." *Id.* These allegations indicate that the Plaintiff "'relie[d] heavily upon [the Termination Letter's] terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco*, 622 F.3d at 111 (internal citations omitted). *See, e.g.*, *Serdarevic v. Centex Homes, LLC*, 760 F. Supp. 2d 322, 330 (S.D.N.Y. 2010) (internal citations omitted). As such, the Court finds that the Termination Letter is integral to the Plaintiff's complaint.

The Court also will take judicial notice of the Plaintiff's EEOC Charge and the EEOC Dismissal. This Court "may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment." *Evans v. N.Y. Botanical Garden*, No. 02 Civ. 3591, 2002 WL 31002814, at *4 (S.D.N.Y. Sept.4, 2002); *see also Kavowras v. New York Times Co.*, 328 F.3d 50, 57 (2d Cir.2003) (taking judicial notice of a National Labor Relations Board document); *Salvat v. Constr. Res. Corp.*, No. 17-CV-4002, 2017 WL 6210849, at *3 n.1 (S.D.N.Y. Dec. 7, 2017) (taking judicial notice of an EEOC charge) (internal citations omitted); *Daniel v. Long Island Hous. P'ship, Inc.*, No. 08-CV-01455, 2009 WL 702209, at *5 n.4 (E.D.N.Y. Mar. 13, 2009) ("The Court may consider the EEOC charges because they are public documents filed in state administrative proceedings, as well as because

they are integral to her Title VII claim." (internal citations omitted)); *Lindner v. Int'l Bus. Mach. Corp.*, No. 06 Civ. 4751, 2008 WL 2461934, at *1 n. 1 (S.D.N.Y. June 18, 2008) (taking judicial notice of an EEOC filing); *Muhammad v. New York City Transit Auth.*, 450 F.Supp.2d 198, 204–05 (E.D.N.Y. 2006) (taking judicial notice of an EEOC charge and agency determination); *Dutton v. Swissport USA, Inc.*, No. 04 CV 3417, 2005 WL 1593969, at *1 n.1 (E.D.N.Y. July 1, 2005) (taking judicial notice of transcript from Worker's Compensation Board hearing and plaintiff's New York State Division of Human Rights complaint); *Brodeur v. City of N.Y.*, No. 04 Civ. 1859, 2005 WL 1139908, at *3 (E.D.N.Y. May 13, 2005) (stating that the court could consider "public documents of which the plaintiff has notice" on a Rule 12(b)(6) motion to dismiss).

## C. AS TO THE TITLE VII CLAIMS

### 1. Timeliness

#### a. Discrimination Claim

The Plaintiff's Title VII claims based on incidents that occurred prior to July 9, 2015 are time-barred. In New York State, a plaintiff has to file a Title VII claim with the EEOC within 300 days of the alleged discriminatory incident. 42 U.S.C. § 2000e–5(e)(1); *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010); *Klein v. N.Y. Univ.*, No. 07 Civ. 0160, 2008 WL 3843514, at *2 (S.D.N.Y. Aug. 14, 2008) (citing *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir.2001)). The Plaintiff filed the EEOC Charge on May 4, 2016. As such, all Title VII claims that are based on incidents that occurred prior to July 9, 2015, 300 days prior to May 4, 2016, are time-barred. *See National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002).

The Plaintiff invokes the continuing violation doctrine to the Title VII limitations period. Under such an exception, "if a Title VII plaintiff files an EEOC charge that is timely as to any

incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d Cir. 2012) (internal citations and quotation marks omitted). As a "hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" the entire period of the alleged hostile work environment "may be considered by a court for the purposes of determining liability" as long as "an act contributing to the claim occurs within the filing period." *Morgan*, 536 U.S. at 117 (citing 42 U.S.C. § 2000e–5(e)(1)). *See, e.g.*, *Raneri v. McCarey*, 712 F. Supp. 2d 271, 281 (S.D.N.Y. 2010) ("To defeat the statute of limitations by applying the continuing violation theory, the evidence must show that such a hostile environment was created prior to, and continued into [the limitations period]."); *Caravantes v. 53rd St. Partners, LLC*, No. 09 Civ. 7821, 2012 WL 96474, at *7 (S.D.N.Y. Jan. 12, 2012) ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice'... Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (quoting *Morgan*, 536 U.S. at 117)).

In the Second Circuit, a district court must perform "an individualized assessment of whether incidents and episodes are related" in order to determine whether any related incidents or episodes occurred within the pertinent limitations period. *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76-77 (2d Cir.2010). The hostile work environment claims must be dismissed if no relevant incidents or episodes occurred during the relevant period. *See, e.g.*, *id*.

In the present case, the Plaintiff alleges that she was subject to "a continuous practice of [race, national origin and gender based] discrimination" by the Defendants. However, the Plaintiff

stopped working for the Defendants on April 25, 2015, more than 300 days before she filed her claim with the EEOC. Amaya was not exposed or subjected to the alleged harassment, discrimination and retaliation that she endured while working at the Property after that date. As such, even under a continuing violation theory, the Plaintiff's hostile work environment claim is untimely. The only incident that occurred within the 300 day period is the Plaintiff's termination, which occurred while the Plaintiff was on medical leave and no longer being paid her salary. As such, the Plaintiff's termination "has no bearing on [P]lainitff's hostile work environment claim[.]" *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-cv-243, 2014 WL 3867560, at *10 (E.D.N.Y. July 29, 2014). As it is undisputed that no instances of workplace harassment occurred after April 25, 2015, the Plaintiff's hostile work environment claims under Title VII are time-barred.

In addition to the Plaintiff's hostile work environment claim, Amaya also alleges wrongful termination and retaliation claims under Title VII. Wrongful termination claims accrue upon notice of termination, in this case September 3, 2015. *See Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197, 2012 WL 847381, at *4 (E.D.N.Y. Mar. 13, 2012) (stating that a plaintiff's EEOC filing alleging wrongful termination needed to be filed 300 days after receipt of the notice of termination). Accordingly, the Plaintiff's deadline to file an EEOC complaint based on wrongful termination was June 29, 2016. As the Plaintiff filed her EEOC Charge in May 2016, the EEOC filing concerning the wrongful termination claim was timely.

### b. Retaliation Claim

The Plaintiff's final Title VII claim is a retaliation claim, which is premised on instances of workplace retaliation as well as her termination. When determining the statute of limitations in a retaliation claim, the Court looks to the time of the adverse employment action rather than the

date when the plaintiff engaged in the underlying activity. *See Harris v. S. Huntington Sch. Dist.*, No. 06-cv-3879, 2009 WL 875538, at *9 (E.D.N.Y. Mar. 30, 2009) ("Although plaintiff's complaints which form the basis of his retaliation claim occurred more than three years prior to the expiration of the relevant statute of limitations period, the point of accrual is not when plaintiff utters the alleged protected speech, but rather when he suffers retaliatory action as a result of that speech." (citing *Washington v. Cty. of Rockland*, 211 F. Supp. 2d 507, 511-12 (S.D.N.Y. 2001))). Therefore, the only retaliatory conduct that is actionable under Title VII is that which transpired after July 9, 2015. When calculating the appropriate statute of limitations for the Plaintiff's workplace retaliation claim, the Court notes that the Plaintiff left work in April 2015 and last met with the Defendants in May 2015. As such, the retaliatory conduct must have taken place prior to July 9, 2015, and is not actionable.

For the purposes of evaluating the timeliness of the unlawful termination and constructive termination theories, the Plaintiff's termination is the applicable adverse employment action. That instance is a discrete act and is sufficient for this Court to find those retaliation claims timely. *See Krachenfels*, 2014 WL 3867560, at *11.

Accordingly, the Plaintiff's workplace retaliation theory is time-barred but her unlawful termination and constructive termination theories may proceed.

### 2. Title VII Discrimination Claim

#### a. Wrongful Termination

The only timely discrimination claims under Title VII that the Plaintiff alleged in her complaint are the wrongful termination claim and the pattern and practice claim. Under Title VII, Amaya claims that she was terminated because of her gender, race and national origin. Compl. ¶ 132. According to the statute, "[i]t shall be an unlawful employment practice for an employer …

16

to discharge any individual, … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2. To establish a *prima facie* claim of wrongful termination, a plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001); *Viola v. Philips Med. Sys.*, 42 F.3d 712, 716 (2d Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).

This is analyzed under the *McDonnell Douglas Corp.* burden-shifting framework. 411 U.S. at 792. To do so, first the Plaintiff must establish a *prima facie* case of discrimination. If she does, the burden shifts to the Defendants to articulate a legitimate, non-discriminatory reason for their actions. Then, the burden shifts back to the Plaintiff to prove that discrimination was the true reason behind the Defendants actions. *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000).

The Second Circuit has "often emphasized [that] the burden of establishing [a] *prima facie* case in employment discrimination cases is 'minimal.'" *McGuiness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001). "In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of [ ] discriminatory intent [based on race, gender or national origin]." *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994) (internal citations omitted).

This claim fails to rise to even the lenient pleading standard of Rule 8 as the Plaintiff provides no detail in the complaint as to the underlying merits of the claim. The complaint's conclusory claim that the discrimination caused the termination does not follow the facts set forth

in the complaint. It is strictly conclusory and lacks evidentiary support. This failure to meet Rule 8's basic pleading requirements is fatal to the claim.

Moreover, the Plaintiff fails to establish a *prima facie* case of discrimination. Amaya has not sufficiently alleged that the circumstances surrounding her termination give rise to an inference of discrimination. "Naked assertions of … discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." *Sanders-Peay v. NYC Dep't of Educ.*, No. 14-CV-4534 CBA MDG, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014) (quoting *Gaddy v. Waterfront Comm'n*, No. 13–CV–3322, 2014 WL 4739890, at *5 (S.D.N.Y. Sept. 19, 2014)). Amaya was terminated more than four months after any of the alleged discrimination. As a matter of law, this is simply too large a gap to demonstrate a causal connection. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001) (noting that "temporal proximity between an employer's knowledge of protected activity and an adverse action as sufficient evidence of causality … must be 'very close'" (internal citations omitted)); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (holding that a three month gap was too large to show a causal connection). The Plaintiff's failure to allege *any* factual allegations that give rise to an inference of discriminatory intent precludes this Court from finding a *prima facie* case of discrimination.

Even if the Plaintiff had established a *prima facie* case of discrimination and the burden shifted to the Defendants, they have articulated a legitimate, nondiscriminatory reason for firing Amaya, namely, that she failed to inform the Defendants of her desire to return to work and refused to provide them with the requested medical information despite numerous requests. Even assuming the truth of the Plaintiff's allegations, she does not dispute any of this information, but

18

merely asserts, in a conclusory fashion, that she was terminated for discriminatory purposes. This statement is insufficient to survive a motion to dismiss.

Accordingly, the Plaintiff fails to plead a wrongful termination claim under Title VII. As such, the Defendants' motion to dismiss as it pertains to the Plaintiff's wrongful termination theory under the Plaintiff's first cause of action is granted.

### b. Pattern or Practice

The Plaintiff also pleads in her complaint that the "Defendants have a pattern and practice of discrimination." Compl. ¶ 141. The Plaintiff's conclusory allegation fails to state a claim upon which relief may be granted as it lacks any detail or support. A pattern or practice discrimination claim has its roots in *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S. Ct. 1843, 52 L. Ed. 2d 396 (1977) and subsequent jurisprudence. In *Teamsters*, the Supreme Court allowed the use of statistical evidence to prove a *prima facie* case of widespread intentional discriminatory conduct by a defendant. To satisfy the burden of proof, a plaintiff must establish "by a preponderance of the evidence that racial discrimination is the company's standard operating procedure[,] the regular rather than the usual practice." *Id*. at 336. The Second Circuit has not specifically ruled as to whether an individual plaintiff may pursue a non-class pattern or practice claim. However, many district courts within this Circuit have ruled that they cannot do so. *See Blake v. Bronx Lebanon Hosp.*, No. 02 Civ. 3827, 2003 WL 21910867, at *5 (S.D.N.Y. Aug. 11, 2003); *Heap v. Cty. of Schenectady*, 214 F.Supp.2d 263, 272 (N.D.N.Y.2002); *Foster-Bey v. Henderson*, No. 3:98CV01097, 2000 WL 620331, at *1 n. 1 (D. Conn. Apr. 7, 2000); *Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809, 821 (E.D.N.Y. 1999); *In re W. Dist. Xerox Litig.*, 850 F.Supp. 1079, 1083 (W.D.N.Y. 1994).

The Court declines to weigh in on whether individual plaintiffs may be able to use the statistical pattern or practice method of proving their non-class claims as this determination is not necessary to dispose of this theory. The Plaintiff provides no support in her complaint for such a claim. As such, the Defendants' motion to dismiss the complaint as it pertains to the Plaintiff's pattern or practice theory under the Plaintiff's first cause of action is granted.

### 3. Title VII Retaliation Claim

#### a. Retaliatory Discharge

Under Title VII, the Plaintiff alleges a retaliatory discharge, constructive discharge and retaliatory workplace claim. As detailed above, the Plaintiff's retaliatory workplace claim is untimely. Title VII prohibits discrimination against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). "To establish a *prima facie* case of retaliation, an employee must show '(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (internal citations omitted).

An adverse employment action is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). This covers a broader range of conduct than the relevant standard for discrimination claims. *See id*.

The Plaintiff's retaliatory discharge claim fails the final prong of the standard for a retaliation claim, namely the existence of "but for" causation between the protected activity and the allegedly adverse employment action. *See Irons v. Bedford Stuyvesant Cmty. Legal Servs.*, No. 13-cv-4467, 2015 WL 5692860, at *16-17, *28-29 (E.D.N.Y. Sept. 28, 2015). Specifically, the Plaintiff failed to successfully plead that "but for" the Plaintiff's complaints of gender, race, and national origin discrimination, the Defendants would not have terminated Amaya.

The causal connection may be demonstrated by "(a) indirectly showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly though other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus." *LaSalle v. City of N.Y.*, No. 13-cv-5109, 2015 WL 1442376, at *2 (S.D.N.Y. Mar. 30, 2015) (quoting *Carr v. WestLB Admin., Inc.*, 171 F.Supp.2d 302, 309 (S.D.N.Y.2001)). "'Title VII claims must be proved according to traditional principles of but-for causation,' which 'requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360, 133 S. Ct. 2517, 186 L. Ed. 2d 503 (2013)) *see also Jones v. Rochester City Sch. Dist.*, 676 F. App'x 95, 97 (2d Cir. 2017).

While a Plaintiff may use temporal proximity to establish causation, he or she may only do so if there are no other allegations that otherwise undercut but-for causation. *Id.* In the instant action, the Plaintiff's failure to provide any requested information to the Corporate Defendants regarding her ability to return to work constitutes a significant intervening event which undermines but-for causation. *See* Spital Decl., Ex. A. The Plaintiff has failed to dispute this intervening event in her complaint or her motion papers, never alleging that she communicated with the Defendants

21

in any meaningful way regarding her medical situation. The undisputed facts, read in a light most favorable to the Plaintiff undermine Amaya's conclusory argument that but-for her complaints, she would not have been fired. In addition, this forestalls the Plaintiff's ability to look to temporal proximity to establish causation. *Zann Kwan*, 737 F.3d at 845 (internal citations omitted). As such, the Defendants' motion to dismiss as it pertains to the Plaintiff's retaliatory discharge theory under the Plaintiff's second cause of action is granted.

### b. Constructive Discharge

The Plaintiff argues, in the alternative, that she was constructively discharged by the Defendants. "[A]n employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily.'" *Petrosino v. Bell Atl.*, 385 F.3d 210, 229-30 (2d Cir. 204) (quoting *Terry*, 336 F.3d at 151-52). An essential component of a constructive discharge claim is a pleading that asserts that the plaintiff quit involuntarily or resigned. *See Cooper v. Wyeth Ayerst Lederle*, 106 F. Supp. 2d 479, 493 (S.D.N.Y.2000) ("Plaintiff never resigned from her position, which is the *sine qua non* of a constructive discharge claim." (citing *Pena v. Brattleboro Retreat*, 702 F.2d 322, 325 (2d Cir. 1983))).

Amaya has not asserted, either in the complaint or in her opposition brief, that the Defendants forced her to resign, quit involuntarily, or even take medical leave. While the Court notes that it is foreseeable that medical leave could be considered an adverse employment action if it is forced, that is not alleged here. It is undisputed that the Plaintiff went on medical leave voluntarily after her fall on the Property and was even paid during a portion of her leave. Further, the parties do not dispute that the Defendants terminated Amaya on September 3, 2015. This invalidates any notion that Amaya was constructively discharged. *See Fitzgerald*, 251 F.3d at 357-

58 ("Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer of a 'constructive' discharge." (internal citations omitted)). Accordingly, the Defendants' motion to dismiss as it pertains to the Plaintiff's constructive discharge theory under the Plaintiff's second cause of action is granted.

## D. AS TO THE § 1981 CLAIMS

### 1. Hostile Work Environment

The Plaintiff alleges that she was discriminated against as a member of the Hispanic race during the course of her employment, in violation of § 1981. The relevant statutory provision states, "[a]ll persons … shall have the same right … to make and enforce contracts … and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). It therefore "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment." *Patterson v. Cty. of Oneida*, 375 F.3d 206, 224 (2d Cir. 2004). The Court will not address any allegations of gender or national origin discrimination under § 1981 as the provision only pertains to racial discrimination. *See Hicks v. Int'l Bus. Mach. Corp.*, 44 F. Supp. 2d 593, 598 n. 2 (S.D.N.Y. 1999) ("§ 1981 does not prohibit gender discrimination." (internal citations omitted)).

Many of the substantive discrimination standards used to analyze claims under Title VII are also used to analyze employment discrimination claims that allegedly violate § 1981. P*atterson*, 375 F.3d at 225 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 69 (2d Cir. 2000)). As such, the Court will analyze the Plaintiff's § 1981 discrimination claims against the Defendants pursuant to the *McDonnell Douglas* burden-shifting framework and the

relevant pleading standard detailed above.  *See, e.g.*, *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) (internal citations omitted).

A hostile work environment claim typically involves a workplace that is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993) (internal citations omitted).  A successfully claim pleads conduct that "(1) 'is objectively severe or pervasive—that is, ... creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race]....'" *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir.2007) (per curiam); *Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998) (same).

"Notably, the Second Circuit has directed that in determining whether the plaintiff suffered an atmosphere of hostility, courts must look to the totality of all the circumstances." *Anderson v. Nassau County Dept. of Corr.*, 558 F.Supp.2d 283, 294 (E.D.N.Y.2008) (Spatt, J.) (citing *Raniola v. Bratton*, 243 F.3d 610, 617 (2d Cir. 2001)).  Under the first element, the standard is a disjunctive one; that is, the conduct at issue must be severe *or* pervasive.  *Dillon v. Ned. Mgmt., Inc.*, 85 F. Supp. 3d 639, 655 (E.D.N.Y. 2015) (internal citations omitted).  The Court will look to various factors, which "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

However, to survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment ... of such quality or quantity that a

reasonable employee would find the conditions of her employment altered for the worse[.]'" *Patane*, 508 F.3d at 113 (quoting *Terry*, 336 F.3d at 148).

The Defendants allege that the conduct is not severe or pervasive enough to successfully state a claim for hostile work environment under § 1981. First, this is a factual question that is generally inappropriate for the Court to determine on a motion to dismiss. *See Torres v. Pisano*, 116 F.3d 625, 631 (2d Cir. 1997) ("The fact that the law requires harassment to be severe or pervasive before it can be actionable does not mean that employers are free from liability in all but the most egregious of cases." (internal citations omitted)). Further, in the Court's view the Plaintiff's facts as they pertain to race based hostile work environment are sufficient to survive a motion to dismiss. *See, e.g.*, *Yang Zhao v. Keuka Coll.*, 264 F. Supp. 3d 482, 489 (W.D.N.Y. 2017); *Doe v. City of N.Y.*, 583 F. Supp. 2d 444, 450 (S.D.N.Y. 2008); *Gad-Tadros v. Bessemer Venture Partners*, 326 F. Supp. 2d 417, 425 (E.D.N.Y. 2004) (Spatt, J.).

In the Second Circuit, it is long settled that Hispanics constitute a race for the purposes of § 1981. *Vill. of Freeport v. Barrella*, 814 F.3d 594, 606 (2d Cir. 2016). While it is well-established that § 1981 does not prohibit discrimination on the basis of national origin, *see Rigodon v. Deutsche Bank Sec., Inc.*, No. 04 Civ. 2548, 2004 WL 2471859 (S.D.N.Y. Nov. 1, 2004), "the Supreme Court made clear that construing 'race' must be interpreted according to '[t]he understanding of race in the 19th century,' when § 1981 was adopted." *Long v. Marubeni Am. Corp.*, 406 F. Supp. 2d 285, 289 (S.D.N.Y. 2005) (quoting in *Saint Francis Coll. v. Al–Khazraji*, 481 U.S. 604, 610, 107 S. Ct. 2022, 95 L. Ed. 2d 582 (1987)). The Second Circuit has noted that claims based on both race and national origin "may substantially overlap or even be indistinguishable depending on the specific facts of a case[.]' *Barrella*, 814 F.3d at 606 (internal citations omitted).

The alleged incidents of discrimination directed at the Plaintiff, which includes the use of epithets regarding "Spanish people," and "illegal[s]" are sufficient for the Court to conclude that the Defendants intended such language in a racial context. *See, e.g.*, *Guzman v. Concavage Marine Constr. Inc.*, 176 F. Supp. 3d 330, 334–35 (S.D.N.Y. 2016) (collecting cases). Accordingly, the Defendants' motion to dismiss as it pertains to the Plaintiff's hostile work environment theory under the Plaintiff's sixth cause of action is denied.

The Defendants further argue that the hostile work environment claim pursuant to § 1981 should be dismissed against the Individual Defendants. In order to plead a claim for individual liability under § 1981, "a plaintiff must demonstrate 'some affirmative link to causally connect the actor with the discriminatory action.' … [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement." *Whidbee*, 223 F.3d at 75 (internal citations omitted); *Patterson*, 375 F.3d at 229 ("[A] plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action[.]" (quoting *Whidbee*, 223 F.3d at 69)).

Personal involvement may include: (1) direct participation in the discrimination; (2) failure to remedy the situation after learning of it; (3) creation of a policy or custom under which unconstitutional practices occurred; and (4) gross negligence in managing subordinates. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (same). The Court notes that although the Supreme Court's decision in *Iqbal* ruled that "[supervisors] may not be held accountable for the misdeeds of their agents," *Iqbal*, 556 U.S. at 677, the Second Circuit has declined to provide guidance as to *Iqbal*'s impact on the above-mentioned factors of personal involvement. This has created conflict in our Circuit. While several district courts have held that *Iqbal* invalidated some of these categories, *see Sash v. United States*, 674 F. Supp. 2d 531, 543-44 (S.D.N.Y. 2009) (collecting cases that invalidate a subset of personal

26

involvement categories), the majority agree that the above-mentioned factors remain good law. *Phillip v. Schriro*, No. 12-CV-8349, 2014 WL 4184816, at *4 (S.D.N.Y. Aug. 22, 2014) (collecting cases that held that *Colon* remains valid). The Court will assume, for the purposes of this motion, that *Colon* remains good law.

The Plaintiff alleges that Kaczynski, Amaya's direct supervisor, was the principal actor in her discrimination claims. Sygman, as Kaczynski's supervisor, was allegedly informed about the discrimination over a period of several months but took no remedial action. The Plaintiff has clearly stated a claim of individual liability against both Kaczynski and Sygman under § 1981. Further, although there are no allegations in the complaint that the individual defendants Gubelli and Wheaton participated in any of the discriminatory conduct directed at Amaya during her time at the Property, it is much too early to conclude that there was no knowledge of the situation, corporate culture that condones discrimination and harassment, or negligence in managing subordinates. As such, the Defendants' motion to dismiss the complaint is denied with respect to the Plaintiff's hostile work environment theory under § 1981 with respect to the Individual Defendants.

### 2. Wrongful Termination

Amaya also alleges that she was wrongfully terminated on the basis of race. The relevant legal standards in a wrongful termination claim premised on § 1981 claim are similar to those in a wrongful termination claim rooted in Title VII. *See, e.g.*, *McDowell v. N. Shore Long Island Jewish Health Sys.*, 839 F. Supp. 2d 562, 566 (E.D.N.Y. 2012) (Spatt, J.); *Richmond v. Gen. Nutrition Centers Inc.*, No. 08 CIV. 3577, 2011 WL 2493527, at *7 (S.D.N.Y. June 22, 2011); *Ebanks v. Neiman Marcus Grp., Inc.*, 414 F. Supp. 2d 320, 326 (S.D.N.Y. 2006); *Pagan v. New York State Div. of Parole*, No. 98-CV-5840, 2002 WL 398682, at *5 (S.D.N.Y. Mar. 13, 2002).

However, unlike in Title VII claims, a showing of discriminatory intent on the part of the defendant is required. *See Patterson*, 375 F.3d at 227.

As discussed in Section II.C.2.a, the Plaintiff fails to plead a wrongful termination action based on race pursuant to Title VII. Hence, for the same reasons, the Plaintiff is unable to plead wrongful termination rooted in § 1981, for both the Corporate Defendants and the Individual Defendants. Accordingly, the Defendants' motion to dismiss as it pertains to the Plaintiff's wrongful termination theory under the Plaintiff's sixth cause of action is granted.

### 3. Retaliatory & Constructive Discharge

Further, the Plaintiff also invokes § 1981 by alleging that she was wrongfully discharged in retaliation for reporting the alleged incidents of racial discrimination. In the alternative, the Plaintiff pleads that she was constructively discharged by the Defendants. "The elements required to make out a claim of retaliatory discharge under 42 U.S.C. § 1981 are the same as those required to make out such a claim under Title VII." *Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir. 1988). In Section II.C.3, the Court ruled that the Plaintiff failed to successfully plead either theory under Title VII. *See* Section II.C.3. Accordingly, the Court holds that, for the same reasons, the Plaintiff has failed to successfully plead either retaliatory or constructive discharge claims under § 1981. This reasoning is applicable to both the Corporate Defendants and the Individual Defendants. The Defendants' motion to dismiss as it pertains to the Plaintiff's § 1981 retaliatory and constructive discharge theories under the Plaintiff's sixth cause of action is granted.

### 4. Retaliatory Workplace

Finally, the Plaintiff alleges a claim of retaliation in the workplace under § 1981. Although the statute is silent on the issue, workplace retaliation is actionable under § 1981. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 451, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008). As with

discrimination claims, retaliation claims alleged under § 1981 are subject to the same analysis as those alleged under Title VII. *Benedith v. Malverne Union Free Sch. Dist.*, 38 F. Supp. 3d 286, 317 (E.D.N.Y. 2014) (Spatt, J.) (citing *D'Ambrosio v. Bast Hatfield, Inc.*, 6:12–CV–1895, 2014 WL 1311948, at *4 n. 5 (N.D.N.Y. Mar. 31, 2014)); *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 320 (E.D.N.Y. 2012) (citing *Smith v. Reg'l Plan Ass'n, Inc.*, No. 10 Civ. 5857, 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011)); *Isaac v. City of N.Y.*, 701 F. Supp. 2d 477, 489 (S.D.N.Y. 2010) (citing *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)).

As stated above, "to establish a *prima facie* case of retaliation, an employee must show '(1) participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.'" *Terry*, 336 F.3d at 141 (quoting *Quinn*, 159 F.3d at 769).

The Defendants allege that the Plaintiff fails to allege any protected activity. The Court disagrees. "The term protected activity refers to action taken to protest or oppose statutorily prohibited discrimination." *Wright v. Monroe Cmty. Hosp.*, 493 F. App'x 233, 236 (2d Cir. 2012). It can be "informal – an employee does not need to lodge a formal complaint of discrimination." *Bowen-Hooks v. City of N.Y.*, 13 F. Supp. 3d 179, 222 (E.D.N.Y. 2014) (internal citations omitted).

As detailed above and in the Plaintiff's complaint, Amaya, on multiple occasions, complained to Sygman, one of her supervisors. The Plaintiff first reported this conduct in December 2014 and it continued until the day she left the Property. As the Defendants themselves point out, it is not necessary that the conduct is actually prohibited by the law; it is sufficient that the plaintiff has a "good faith belief" that the conduct is prohibited. *See La Grande v. DeCrescente Distrib. Co.*, 370 F. App'x 206, 212 (2d Cir. 2010) ("It is well-established that a 'plaintiff may prevail on a claim for retaliation when the underlying conduct complained of was not in fact

unlawful so long as he can establish that he possessed a good faith, reasonable belief that the underlying challenged actions of the employer violated [the] law.'" (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002))); *Hickey v. Myers*, 852 F. Supp. 2d 257, 271 (N.D.N.Y. 2012); *Turner v. Nat'l R.R. Passenger Corp.*, 181 F. Supp. 2d 122, 134 (N.D.N.Y. 2002) (citing *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir. 1988)). *See also Sherman v. Cty. of Suffolk*, 71 F. Supp. 3d 332, 351-52 (E.D.N.Y. 2014) (Spatt, J.) ("[I]mplicit in the requirement that the employer have been aware of the protective activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." (internal citations and quotation marks omitted)).

The Plaintiff's continued complaints to her supervisors that she was allegedly experiencing racial discrimination was sufficient to put the Defendants on notice that she felt the conduct was discriminatory. At this early stage, the Court cannot conclude that these were generalized complaints that the Defendants "could not reasonably have understood that she was complaining of 'conduct prohibited by [§ 1981].'" *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011) (quoting *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998)); *accord Cotterell v. Gilmore*, 64 F. Supp. 3d 406, 434 (E.D.N.Y. 2014) (Spatt, J.) (internal citations omitted)

Finally, the Defendants allege that the Plaintiff fails to plead an adverse action. An adverse employment action is established when "[a] plaintiff [ ] show[s] that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 721 (2d Cir. 2010) (internal citations omitted). These alleged actions are considered "both separately and in the aggregate, as even

minor acts of retaliation can be sufficiently 'substantial in gross' as to be actionable." *Hicks*, 593 F.3d at 165 (citing *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006)).

In the instant case, the Plaintiff pleads in her complaint that the Individual Defendants retaliated against her for continued complaints by (1) increasing the rate and offensive nature of the offensive comments; (2) forcing the Plaintiff to perform demeaning employment tasks that were unique to the Plaintiff; (3) holding staff meetings where Sygman (i) disregarded human resources complaints, and (ii) threatened employees; and (4) threatening the Plaintiff. These accusations are such that a reasonable employee would be discouraged from complaining about discrimination. *See, e.g.*, *Shanks v. Vill. of Catskill Bd. of Tr.*, 653 F.Supp.2d 158, 166 (N.D.N.Y. 2009) ("'[L]esser actions' such as negative reviews, false accusations, and menial job assignments 'may also be considered adverse employment actions.'" (quoting *Zelnik*, 464 F.3d at 225-26)).

Accordingly, the Plaintiff has successfully alleged a workplace retaliation claim under § 1981. The Defendants' motion to dismiss as it pertains to the Plaintiff's § 1981 retaliatory workplace theory under the Plaintiff's sixth cause of action is denied.

## E. AS TO THE NEW YORK STATE LAW CLAIMS

### 1. As to the Corporate Defendants

The Defendants contend that since the standards for evaluating discrimination and retaliation claims are similar under Title VII, § 1981 and the NYSHRL, the Plaintiff's NYSHRL should be dismissed for the same reasons as the applicable federal claims. Claims of both employment discrimination and retaliation under the NYSHRL are evaluated using the same framework as those claims under § 1981. *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 576 (S.D.N.Y. 2011).

The Plaintiff has failed to plead a discrimination or retaliation claim under theories of unlawful termination, retaliatory discharge or constructive discharge pursuant to either applicable federal statute. As such, the Defendants' motion to dismiss as it pertains to the Plaintiff's unlawful termination theory under the Plaintiff's third cause of action is granted. Further, the Defendants' motion to dismiss as it pertains to the Plaintiff's retaliatory discharge and constructive discharge theories under the Plaintiff's fourth cause of action is granted as to the Corporate Defendants.

The Plaintiff alleges a theory of hostile work environment under NYSHR § 296(1), which prohibits an employer from discriminating on the basis of, *inter alia*, race, creed, color, national origin, sexual orientation, sex or disability. *Id*. As this Court has already determined that the Plaintiff stated a claim for a hostile work environment discrimination because of her race, pursuant to § 1981, the Plaintiff's New York State hostile work environment claim as it pertains to race may proceed. The Plaintiff also alleges a hostile work environment claim as it pertains to national origin and gender. The Court, "mindful that this is a motion to dismiss and not one for summary judgment following discovery" also finds that the Plaintiff has successfully alleged a hostile work environment claim based on gender and national origin discrimination. *Delisi v. Nat'l Ass'n of Prof'l Women, Inc.*, 48 F. Supp. 3d 492, 497 (E.D.N.Y. 2014). Accordingly, the Defendants' motion to dismiss as it pertains to the Plaintiff's New York State hostile work environment theory under the Plaintiff's third cause of action is denied as to the Corporate Defendants.

The Plaintiff also alleges a workplace retaliation theory under NYSHRL § 296(7). The statute makes it an "unlawful discriminatory practice to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article ..." *Id*. This Court has already ruled that the Plaintiff successfully stated a claim for workplace retaliation based on race, pursuant to § 1981. As the Plaintiff's workplace retaliation claim based on the NYSHRL also

includes national origin and gender based workplace retaliation, the Court finds that the Plaintiff has successfully alleged such a claim. Thus, the Defendants' motion to dismiss as it pertains to the Plaintiff's workplace retaliation theory under the Plaintiff's New York State fourth cause of action is denied as to the Corporate Defendants.

### 2. As to the Individual Defendants

The Defendants contend that all of the Plaintiff's state law claims against the Individual Defendants fail for a variety of reasons. First, the Defendants allege that the retaliation NYSHRL claim premised on a retaliatory discharge theory fails against the Individual Defendants. As previously detailed in Section II.E.1, Amaya fails to successfully plead a retaliatory discharge claim premised on NYSHRL against the Corporate Defendants. Based on those same facts, the Plaintiff also fails to allege liability against the Individual Defendants. For the same reasons, the Plaintiff unsuccessfully pleads liability against Individual Defendants grounded on wrongful termination claims or constructive discharge claims based on the NYSHRL.

In addition, the Defendants claim that there are insufficient facts to support the allegations that Wheaton, Sygman or Kaczynski are employers under NYSHRL § 296(1). "[A]n employee may not be individually subject to suit as an employer under Section 296(1) of the [NYS]HRL 'if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others.'" *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 379 (S.D.N.Y. 1999) (quoting *Patrowich v. Chem. Bank*, 63 N.Y.2d 541, 542, 473 N.E.2d 11 (1984)). The Court declines to rule prior to discovery that neither Wheaton, Sygman nor Kaczynski fits such a definition.

### 3. As to Aiding & Abetting

The Defendants argue that the Plaintiff's NYSHRL aiding and abetting claim fails against all Individual Defendants because no underlying violation has occurred. NYSHRL § 296(6) makes it unlawful "for any person to aid, abet, incite, compel or coerce" prohibited acts under the NYSHRL. *Id.* This "is only a viable theory where an underlying violation has taken place." *Falchenberg v. N.Y. State Dep't of Educ.*, 338 F. App'x 11, 14 (2d Cir. 2009); *Nicholson v. Staffing Auth.*, No. 10–CV–2332, 2011 WL 344101, at *2 (S.D.N.Y. Feb. 1, 2011) ("A predicate requirement of aider-and-abettor liability is a finding of primary liability as to the employer."); *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 213 (N.D.N.Y. 2002) ("In order to hold an individual liable under [this provision], ... plaintiff must also show that the individual aided or abetted 'a primary violation of the [NYS]HRL committed by another employee or the business itself.'" (internal citations omitted)). As neither of the Plaintiff's discrimination or retaliation claims under NYSHRL have been dismissed against any of the Defendants, this theory remains viable. The Defendants' motion to dismiss as it pertains to the Plaintiff's fifth cause of action is denied.

## F. AS TO THE NEW YORK CITY HUMAN RIGHTS LAW CLAIM

Finally, the Plaintiff attempts to amend her complaint by adding a claim under the New York City Human Rights Law ("NYCHRL") 8-107(6) through her motion papers. However, "a party is not entitled to amend its complaint through statements made in motion papers[.]" *Soules v. Connecticut, Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 56 (2d Cir. 2018) (quoting *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). This Court declines to allow the Plaintiff to amend the complaint in such a way and denies the Plaintiff's current attempt to do so in its opposition to a motion to dismiss. *See, e.g.*, *Novio v. New York Acad. of Art*, —F. Supp. 3d—, No. 17 CIV. 5648, 2017 WL 6398746, at *3 (S.D.N.Y. Dec. 13, 2017).

## III.  CONCLUSION

For the reasons stated above, the Defendants' motion to dismiss the Plaintiff's complaint pursuant to Rule 12(b)(6), is granted in part and denied in part.  It is granted to the extent that the Plaintiff's first and second causes of actions are dismissed.  The Plaintiff is precluded from advancing a wrongful termination, retaliatory discharge or constructive discharge theory pursuant to § 1981 or the NYSHRL against the Defendants.  Further, the Plaintiff is also precluded from advancing a claim under the NYCHRL.

It is denied to the extent that the Plaintiff's fifth cause of action may proceed and the Plaintiff may advance a hostile work environment theory against all the Defendants pursuant to the NYSHRL (Claim 3); a workplace retaliation theory against all the Defendants pursuant to the NYSHRL (Claim 4); and a hostile work environment and retaliatory workplace theory against all the Defendants pursuant to § 1981 (Claim 6).


It is **SO ORDERED**:

Dated: Central Islip, New York

March 14, 2018

___/s/ Arthur D. Spatt__

ARTHUR D. SPATT

United States District Judge