UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
NELLY AMAYA,

                    Plaintiff,            <u>ADOPTION ORDER</u>
                                          17-CV-1596(JS)(LGD)
    -against-

BALLYSHEAR LLC, DIANE GUBELLI,
MARIKA SYGMAN, STEVE KACZYNSKI,
and GELLER & COMPANY LLC,

                    Defendants.
--------------------------------X
APPEARANCES
For Plaintiff:      Melissa Mendoza, Esq.
                    Derek T. Smith Law Group, PC
                    30 Broad Street, 35th Floor
                    New York, New York  10004

For Defendants:     Andrew Spital, Esq.
                    Joseph Thompson Baio, Esq.
                    Jill Kaden Grant, Esq.
                    Willkie Farr & Gallagher
                    787 Seventh Avenue
                    New York, New York  10019

SEYBERT, District Judge:

        Nelly Amaya ("Plaintiff"), an Ecuadorian woman, worked

as a housekeeper at the Southampton, New York residence of Michael

Bloomberg.  She commenced this employment discrimination action

against the entities and individuals responsible for managing and

providing services for Mr. Bloomberg's residence: Ballyshear LLC

("Ballyshear"), Geller & Company LLC ("Geller"), Diane Gubelli

("Gubelli"), Steve Kaczynski ("Kaczynski"), Marika Sygman

("Sygman," collectively, "Defendants").  (<u>See generally</u> Fourth Am.

Compl. ("FAC"), ECF No. 54.)  Separate motions for summary judgment

were filed by Ballyshear, Kaczynski and Sygman (the "Ballyshear Defendants"), and Geller and Gubelli (the "Geller Defendants"). (See Ballyshear Defs. Mot., ECF No 102; Geller Defs. Mot., ECF No. 103.)  The Court referred Defendants' motions to the Honorable Lee G. Dunst for a Report and Recommendation ("R&R"). (See Oct. 31, 2022 Elec. Order.)

In his R&R, Judge Dunst recommends granting Defendants' motions and dismissing this case with prejudice. (See R&R, ECF No. 132, at 2.)  Pending before the Court are Plaintiff's objections to the R&R and Defendants' responses thereto. (Obj., ECF No. 133; Resp., ECF No. 138.)  For the following reasons, Plaintiff's objections are OVERRULED and Judge Dunst's R&R is ADOPTED IN ITS ENTIRETY.

<u>BACKGROUND</u>

Judge Dunst issued his R&R on January 13, 2023.  Neither Plaintiff nor Defendants specifically challenge the "Factual Background" and "Procedural History" sections of the R&R.  (See R&R at 2-12.)  As such, the Court incorporates herein by reference Judge Dunst's summary of the facts and posture of this case. See Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022).

In the R&R, Judge Dunst identified five primary grounds that Defendants sought summary judgment against Plaintiff's claims: (1) the alleged behavior did not create a hostile work

environment and was not based on Plaintiff's race or gender; (2) there were substantial inconsistencies among Plaintiff's testimony, EEOC charge, complaint, drafted timeline of events, and declaration in opposition to Defendants' motions; (3) there is no basis to impute the alleged harassment to Ballyshear; (4) Geller was not Plaintiff's employer; and (5) no one at Geller harassed or retaliated against Plaintiff. (R&R at 15.)

Beginning with Plaintiff's hostile work environment claim, Judge Dunst found the record to be insufficient to establish such a claim under 42 U.S.C. § 1981 based on racial discrimination. (Id. at 15-20.) The R&R quoted numerous examples of race-based statements to which Plaintiff claimed to have been subjected:

> Starting around Plaintiff's first week of employment, Kaczynski called Plaintiff "illegal" and asked Plaintiff if she had papers. (Pl. 56.1 ¶ 212-215, 345, 66.) [P]laintiff immediately saw her direct supervisor, Sygman condone such behavior and only tell Kaczynski that everyone must have papers to work at Ballyshear. (Pl. 56.1 ¶ 56). Throughout Plaintiff's employment Kaczynski subjected Plaintiff to the following racial epithets on a constant, continuous basis: calling Plaintiff an "illegal" (Pl. 56.1 ¶ 217, 247); saying [L]atinos were illegal, (Pl. 56.1 ¶ 217, 247); that he was tired of illegals (Pl. 56.1 ¶ 217, 66.); "Latinos had no rights to be in this country you are taking my money." (Pl. 56.1 ¶ 216, 218); "You are coming here to my country, to my city" (Pl. 56.1 ¶ 218); would "point[] to his wallet," and say they were "living off his money because they didn't pay taxes. They were living off the government. They were just taking advantage" (Pl. 56.1 ¶ 44-45, 48-49); "that it wasn't fair for

3

>illegals to be compensated for their
>activities" (Pl. 56.1 ¶ 120); Hispanic women
>only come to the United States to reproduce
>and live off the government (Pl. 56.1 ¶ 281-
>282); Spanish-speaking people routinely leave
>medical bills unpaid and Kaczynski was
>surprised Plaintiff had insurance. (Pl. 56.1
>¶ 226). Kaczynski said the Spanish people who
>all come here and have babies so they can stay
>in this country. (Pl. 56.1 ¶ 66).

(Id. at 17-19). Despite finding these comments offensive, Judge
Dunst determined they "do not rise to the high level to demonstrate
an objectively unreasonable work environment," did not alter
Plaintiff's performance at work, and were not connected to her
fall in April 2015. (Id. at 19 (citing Abalola v. St. Luke's-
Roosevelt Hosp. Ctr., No. 20-CV-6199, 2022 WL 973861, at *11-12
(S.D.N.Y. Mar. 30, 2022)).) Judge Dunst analogized the instant
case to Abalola, where the court "held that although the alleged
comments were offensive (as they were here), they were not
sufficiently continuous and concerted to be deemed pervasive."
(Id. at *11 (citing Abalola, 2022 WL 973861, at *11.) He also
highlighted the authority upon which Abalola was based to provide
context for its application to the facts at hand:

>"For racist comments, slurs, and jokes to
>constitute a hostile work environment, there
>must be more than a few isolated incidents of
>racial enmity, meaning that instead of
>sporadic racial slurs, there must be a steady
>barrage of opprobrious racial comments."
>Schwapp [v. Town of Avon, 118 F. 3d 106, 110
>(2d Cir. 1997)] (citations, alteration, and
>internal quotation marks omitted). "[W]hether
>racial slurs constitute a hostile work

environment typically depends upon the quantity, frequency, and severity of those slurs, considered cumulatively in order to obtain a realistic view of the work environment." Id. at 110-11 (citations and internal quotation marks omitted). . . . Obi v. Westchester Med. Reg'l Physician Servs., P.C., No. 19-CV-3022, 2020 WL 1434159, at *8 (S.D.N.Y. Mar. 23, 2020) (holding that three comments made over two years to the plaintiff "that she should keep quiet because of her race; that she could not ask a white, Jewish doctor for assistance; and that as a 'black African,' she should go back to her 'poor country' . . . objectively rise to the level of racial hostility, but are not severe or pervasive enough to sustain a hostile work environment claim"); Mills-Sanchez v. Rsch. Found. for State Univ. of N.Y., No. 1:18-CV-723, 2019 WL 2549726, at *10 (N.D.N.Y. June 20, 2019), aff'd sub nom. Mills-Sanchez v. State Univ. of N.Y. Rsch. Found., 820 F. App'x 63 (2d Cir. 2020) ("[C]onsidering the . . . allegations involving a few race-related remarks that are alleged to have occurred intermittently over the span of six years—the harassment experienced by plaintiff was not severe or pervasive enough to constitute a hostile work environment."); Sanchez Day v. N.Y.C. Dep't of Consumer Affairs, No. 10-CV-4888, 2016 WL 1070843, at *5 (S.D.N.Y. Mar. 15, 2016) (holding that the use of a slur two to four times in an eighteen-month period did not amount to a hostile work environment); Lewis v. City of Norwalk, 562 F. App'x 25, 28 (2d Cir. 2014) (summary order) (holding that "overtly sexual conduct" that "occurred only sporadically over time, and no more than a few times a year" was insufficient to establish a hostile work environment) . . . . Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) ("[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.")

(Id. at 18-19 (quoting Abalola, 2022 WL 973861, at *11-12).)

Next, Judge Dunst considered and rejected Plaintiff's Section 1981 retaliation claim under the McDonnell Douglas burden-shifting framework.  (Id. at 20.)  Accepting as true Plaintiff's claims to be engaged in multiple protected activities from January 2015 to April 27, 2015, including making complaints to Sygman about Kaczynski's remarks and that she suffered adverse employment actions as a result, i.e., "a purported note to Mr. Bloomberg, a discussion between Sygman and a Geller representative regarding Plaintiff, allegedly requiring Plaintiff to perform demeaning tasks such as putting on Sygman's shoes and jacket for her, Sygman taking away her Citarella grocery credit card, and Sygman commenting on Plaintiff's weight."  (Id. at 21.)  However, Judge Dunst did not find these examples to be indicia of adverse harm or clearly connected to the purported complaints Plaintiff made to Sygman.  (Id.)  Judge Dunst then evaluated additional potential examples of adverse employment actions, which included the alleged failure to assist Plaintiff with her work authorization documents, threats to terminate employees who went to human resources with complaints, Sygman and Kaczynski's visit to Plaintiff's home after her fall, statements by Kaczynski and non-party Jennifer Roldan that Geller and Ballyshear could deport Plaintiff, and the eventual termination of Plaintiff's employment.  (Id. at 22.)  After noting some of the relevant allegations to this second set of possible

adverse actions occurred "outside the relevant time period of this case as previously limited by Judge Spatt to April 27, 2015," i.e., Plaintiff's firing and Sygman and Kaczynski's visit to Plaintiff's home, Judge Dunst did not find these examples to be material or caused by Plaintiff's protected activities:

> The Court does not find evidence to support the claim that Defendants failed to assist her with her work authorization due to any protected activity. The Court also does not find evidence to suggest the alleged statements of Kaczynski or Sygman at her home were made in order to deter Plaintiff from reporting any discriminatory conduct. The Court does find evidence to support the allegation that Sygman may have attempted to dissuade employees from making a complaint to human resources. The evidence however appears to support that Sygman held this meeting to deter the reporting of any alleged affair between her and Kaczynski, not to deter Plaintiff from making a claim regarding a hostile work environment. Notably, these alleged threats by Sygman were not accompanied by action and did not deter Plaintiff from ultimately making a complaint to human resources.

(Id. at 23. (internal citation omitted).)  Moreover, Defendants offered a non-retaliatory explanation for Plaintiff's termination in September 2015: "the inability to determine if she would be returning from leave" after her fall.  (Id.)

Turning to Plaintiff's New York State Human Rights Law ("NYSHRL") claims for harassment and aiding and abetting, Judge Dunst considered alleged racial statements by Kaczynski described above as well as "allegations of national origin (which

significantly overlap with the . . . Section 198 claims)" and alleged sex discrimination. (Id. at 24.)  The pertinent sex-based discrimination allegations set forth in the R&R were primarily based upon "statements and actions by [Plaintiff's] co-workers":

> Here, Plaintiff stated that there were many examples of sexual comments from Roldan and Barrera that would be innumerable and they constantly talked about their sex lives. (Pl. 56.1 ¶ 337, 52, 227.). Most significantly Roldan and Barrera did not have these conversations or gestures with male employees. (Pl. 56.1 ¶ 244, 241.). Kaczynski, Roldan and Barrera talked about Plaintiff's weight, female stereotypes, Plaintiff's appearance as a woman and a wife, female body parts, having the male coworker perform fellatio on them or them masturbating and asking if Plaintiff did it. (Pl. 56.1 ¶ 241, 222-223, 228, 232-246.). Also Kaczynski would call women bitches and didn't care that Plaintiff found it offensive and then he thought he could just give Plaintiff a hug unwelcomed. Kaczynski called Roldan a bitch (Pl. 56.1 ¶ 224-225, 227, 282, 284.). Defendants perpetuated a campaign to harass plaintiff on the basis of her sex. Talking about male coworker sticking his tongue in their vaginas and masturbating is objectively and subjectively offensive, something that a reasonable person would find hostile or abusive.

(Id. at 24-25 (quoting Pl. Opp'n II, ECF No. 118, at 30).) Judge Dunst found these examples of sex-based discrimination to be insufficient for reasons similar to why the allegations of race-based discrimination were inadequate: "[T]hese allegations [are] not severe or pervasive enough to create an objectively hostile work environment." (Id. at 25 (citing Wells-Williams v. Kingsboro

8

Psychiatric Ctr., 03-CV-0134, 2007 WL 1011545, at *6 (E.D.N.Y. Mar. 30, 2007)).)   In addition, he did "not find that the alleged behavior was necessarily because of Plaintiff's sex." (Id. (emphasis in original).)   The absence of a primary violation of the NYSHRL led Judge Dunst to conclude that Plaintiff's aiding abetting claim also fails. (Id.)   As a final matter, Judge Dunst recommends dismissal of Plaintiff's NYSHRL retaliation claim for the reasons that support dismissal of the Section 1981 retaliation claim. (Id. at 25-26.)

ANALYSIS

I.   Legal Standard

    A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3). The district judge must evaluate proper objections de novo; however, where a party "makes only conclusory or general objections, or simply reiterates [the] original arguments, the Court reviews the Report and Recommendation only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (quoting Barratt v. Joie, No. 96-CV-0324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002)); FED. R. CIV. P. 72(b)(3).

II.   Discussion

    Plaintiff asks the Court to reject Judge Dunst's R&R in its entirety and lodges objections that are categorized in four

parts: (1) the R&R improperly "excluded material issues of fact by limiting the relevant time period of this case to April 27, 2015"; (2) the R&R improperly weighed the credibility of the evidence; (3) the R&R improperly applied the law applicable to Plaintiff's hostile work environment claims; and (4) the R&R overlooked factual matters as to Plaintiff's retaliation claims.  (See Obj. at 2-9.) In response, Defendants ask the Court to review the R&R for clear error.  (See Resp. at 1.)  They contend that Plaintiff's objections are improper because "they are conclusory and merely ask the Court to re-examine the arguments she raised in her summary judgment brief and reach a different conclusion."  (See id.)  However, even if the Court were to review the R&R de novo, Defendants submit that Plaintiff's objections are meritless, and that Judge Dunst carefully considered all of the material facts and did not make credibility determinations.  (Id.)

    A.    The Relevant Time Period

        In her first objection, Plaintiff claims the R&R omitted material issues of fact by limiting the relevant time period of this case from December 8, 2014 to April 27, 2015.  (Obj. at 2.) According to Plaintiff, "[h]ad the R&R analyzed Plaintiff's claims during the correct time period[,] the R&R would have found Plaintiff presented sufficient evidence to raise triable issues of fact to withstanding summary judgment."  (Id.)

In her oppositions to both of Defendants' summary judgment motions, Plaintiff urged Judge Dunst to expand the time period relevant to her claims from December 8, 2014 to September 3, 2015. (Pl. Opp'n I, ECF No. 110, at 2-3; Pl. Opp'n II, ECF No. 118, at 2-3.) The earlier April 27, 2015 cut-off date for Plaintiff's claims was initially established by Judge Spatt in his decision on Defendants' prior motion to dismiss.[1] (See ADS Mem. of Decision & Order ("ADS Mem. of D&O"), ECF No. 35, at 15.) Judge Dunst reviewed Judge Spatt's decision on this issue and maintained the time-period established therein in his R&R. As such, Plaintiff's first objection is merely the reiteration of an argument raised in her underlying opposition papers that was rejected by Judge Dunst, and is subject to clear error review. See Rizzi v. Hilton Domestic Operating Co., Inc., No. 18-CV-1127, 2020 WL 6253713, at *2 (E.D.N.Y. Oct. 23, 2020).

In light of the deference afforded to prior rulings in subsequent stages of the same case pursuant to the "law-of-the-case doctrine," especially rulings made by a judge other than the undersigned, see Chiari v. New York Racing Ass'n Inc., 972 F. Supp.

---

[1] As noted by Judge Dunst in his R&R, Judge Spatt's decision actually utilized an end date of April 25, 2015, which was the alleged date of Plaintiff's fall and her last day working at Mr. Bloomberg's residence. (See ADS Mem. of D&O at 15; R&R at 15 n.15.) However, the parties' Rule 56.1 Statements demonstrate that April 27, 2015 was the date Plaintiff fell and stopped working. (See R&R at 22 n.15.)

2d 346, 361-62 (E.D.N.Y. 2013), the Court sees no clear error in Judge Dunst's finding that the pertinent time period here is from December 8, 2014 to April 27, 2015, as previously indicated by Judge Spatt.  Moreover, although he was not required to do so, Judge Dunst even considered events that occurred outside of the relevant time period (see R&R at 22-23), and Plaintiff does indicate in her first objection what additional matters "would have . . . raise[d] triable issues of fact to withstand summary judgment" (see Obj. at 2; see also Resp. at 11 ("Plaintiff . . . argues that, had the Magistrate Judge considered alleged events outside of the established period, he would have found triable issues of fact, without identifying what those issues are.").)  Accordingly, Plaintiff's first objection is OVERRULED.

B.   Credibility of the Evidence

Plaintiff's second objection contends that Judge Dunst improperly "drew inference[s] from disputed facts presented by the parties and weighed the credibility of evidence."  (Obj. at 3.) This objection is framed in two parts, with the first stemming from a "timeline" Plaintiff prepared that reflects some of her allegations against Defendants.  (See id.)  Plaintiff claims this timeline to be "[non-]exhaustive of the unlawful conduct she endured," and that Judge Dunst gave more weight to this incomplete timeline than her testimony regarding the "allegations and investigations into Plaintiff's complaints" to human resources.

12

(Id.)  The Court finds this objection, which does not cite to the portion of the R&R at issue nor which part(s) of her timeline that Judge Dunst purportedly credited over her deposition testimony, to be conclusory and general such that clear error review is warranted.

Having reviewed the R&R, the Court does not understand the basis for this aspect of Plaintiff's objection.  Judge Dunst's R&R is amply supported with citations to the parties' Local Rule 56.1 Statements and summary judgment record evidence, including Plaintiff's deposition testimony.  Despite Plaintiff's argument to the contrary, the R&R only mentions the timeline in passing, primarily to demonstrate the document's existence, to wit: "Plaintiff prepared an undated outline of events that allegedly occurred during her time working at the Ballyshear Residence.  Some of the allegations against Defendants outlined below were included on this timeline."  (R&R at 5 (citing Defs. Counter 56.1 Stmt., ECF No. 130, ¶ 37).)  This statement in the R&R is an express acknowledgement that Judge Dunst considered events beyond those Plaintiff outlined in her timeline.  Moreover, the Court cannot find any indicia that Judge Dunst made factual findings about the events giving rise to this case that were derived from the evidentiary value of the timeline.  As such, it can hardly be argued that the R&R relied upon this timeline, let alone improperly weighed or credited it.  Accordingly, this objection is OVERRULED.

The next part of this objection claims Judge Dunst improperly weighed the credibility of the evidence to determine there was "no evidence to suggest the alleged statements of Kaczynski or Sygman at [Plaintiff's] home were made in order to deter Plaintiff from reporting any discriminatory conduct." (Obj. at 3 (quoting R&R at 23).)   Nowhere in her objections does Plaintiff dispute the R&R's finding that this visit to her home occurred after April 27, 2015, which is beyond the relevant time period of this case.   (See R&R at 22.)   Once again, the Court is not extending this April 27, 2015 date to include irrelevant evidence that occurred while Plaintiff was on medical leave after her fall.   Thus, this objection is improper and will not be considered, and Plaintiff's second objection is OVERRULED in its entirety.[2]

---

[2] Further, to the extent Plaintiff generally argues that Judge Dunst weighed the credibility of the evidence, that argument is also rejected. Rightfully so, Judge Dunst questioned the veracity of the declaration Plaintiff submitted in opposition to Defendants' motions because she contradicted her testimony and raised allegations that were brand new to this litigation. (See R&R at 17 n.3.) Although Judge Dunst highlighted these issues, he expressly disclaimed using Plaintiff's credibility as a basis to justify granting summary judgment, and the contents of the R&R do not lead the Court to conclude otherwise. (See id. ("In this case, the Court does not find that the testimony is so contradictory and incomplete to be a reason for granting summary judgment; to be clear, the Court has not factored an assessment of the credibility of the evidence presented in this Report and Recommendation. However, the Court does note that Plaintiff's Declaration at ECF No. 111-1 does appear to raise certain allegations for the first time and includes statements that do appear inconsistent with her prior testimony." (emphasis added)).)

C.   <u>Hostile Work Environment Claims</u>

Plaintiff's third objection focuses on the R&R's recommendations to dismiss her hostile work environment claims. (<u>See</u> Obj. at 3-8.)  She argues the R&R "improperly applied the law to the facts in this case," particularly, Judge Dunst's analysis regarding whether Defendants' race- and sex-based harassment was "sufficiently pervasive or severe."  (<u>Id.</u> at 3-7.)  According to Plaintiff, "[t]he R&R seemingly increased the level of harassment that is required for Plaintiff's . . . hostile work environment claim . . . and . . . failed to analyze the totality of the circumstances."  (<u>Id.</u> at 4.)

1.   <u>Race-Based Harassment</u>

Plaintiff contends the R&R overlooked the following factual matters: (1) Kaczynski's racist comments occurred on a daily basis over 5 months and were made at least 10 times during lunch; (2) Sygman told Plaintiff to put up a sign in Spanish saying a worker could not drink water from the house yet Sygman offered refreshments to Caucasian workers; (3) Plaintiff's complaints to Sygman about Kaczynski's racially discriminatory comments and Sygman declining to take any remedial action; (4) Kaczynski's comments becoming more aggressive after Plaintiff complained to Sygman; and (5) Kaczysnki telling Plaintiff she was "illegal" and that Geller and Ballyshear could have her deported.  (<u>See</u> Obj. at 5-6.)

The Court finds that Plaintiff has raised prior iterations of each of these arguments in her opposition to the Ballyshear Defendants' summary judgment motion. (See Pl. Opp'n II, ECF No. 118, at 5-6 ("Sygman, Kaczynski, Plaintiff, Roldan, Barrera, and Ingram ate lunch together in the kitchen on an almost daily basis. . . . Starting around the first week of Plaintiff's employment, Defendant Kaczynski discriminated against Plaintiff on the basis of her race, national origin, and sex/gender on a continuous, constant basis. . . . Kaczynski attacked Plaintiff at the lunch table with racially discriminatory remarks such as "latinos should get out of my country."); id. at 9 ("Sygman also discriminated against Hispanics by offering drinks and refreshments from the house to Caucasians and not Hispanic workers. Sygman also had Plaintiff make a 'Do not drink water from the house' sign written in Spanish and hang it above the waters after Plaintiff offered water to Hispanic painters.  There was no such sign written in English."); id. at 9-10 ("Between January to late February 2015, on an almost weekly basis, Plaintiff complained to Sygman that Kaczynski, Barrera, and Roldan were discriminating against Plaintiff because of her sex/gender, race, and national origin. . . . Plaintiff complained to Sygman quite a few times about Kaczynski.  Sygman defended Kaczynski and said she couldn't do anything."); id. at 11-12 ("Between March and April 2015, Sygman

overtly retaliated against Plaintiff by having Plaintiff perform demeaning tasks which were not previously required, nor were other housekeepers asked to perform these tasks. . . [,] further enabling Kaczynski, Roldan and Barrera to continue discriminating against Plaintiff and even more aggressively.").)  Thus, the Court reviews the portions of the R&R regarding these matters for clear error.

Judge Dunst conducted a painstaking review of the evidentiary record in his R&R, and thoroughly considered each of the race-based factual matters raised by Plaintiff in this portion of her objections.  He considered the frequency of Kaczynski's remarks (see R&R at 5-6, 16-18), Sygman telling Plaintiff to hang a sign in Spanish to stop workers from drinking water inside the Bloomberg residence (id. at 6), Plaintiff's complaints to Sygman (id. at 9, 17), Kazynski's remarks after Plaintiff made complaints (id. at 6-9), and Kazynski's alleged comments regarding Plaintiff's immigration status (id. at 5-6, 17-18).  Although Plaintiff avers that the R&R did not consider the totality of the circumstances (see Obj. at 3), Judge Dunst reviewed the required elements for a hostile work environment claim (see R&R at 15-17) and correctly noted that the facts presented here "do not rise to the level of an objectively hostile work environment claim" under either Section 1981 or NYSHRL (see id. at 18-20, 23-24).  See

<u>Fukelman v. Delta Air Lines, Inc.</u>, No. 18-CV-0002, 2020 WL 2781662,
at *4-5 (E.D.N.Y. May 29, 2020).

    2.  <u>Sexual Harassment</u>

      Turning to the sexual-harassment based aspect of
Plaintiff's hostile work environment claim, in her objections, she
"incorporates herein the same argument in the race-based section
above regarding the R&R's flawed analysis of severe or pervasive[;]
[i]f the R&R looked at the totality of the circumstances, including
the sexual gestures, sounds, [and] comments[,] that is enough to
meet the standard."  (Obj. at 7.)  The totality of Plaintiff's
objection on this issue reads:

> The R & R states the alleged behavior was not
> necessarily because of Plaintiff's sex and
> cites to a case where the outcome would not be
> different if the Plaintiff were a male.
> However, Plaintiff's coworkers were talking
> about female body parts and Plaintiff being a
> wife.  Defendant Kaczynski and coworker Ingram
> testified to not hearing these vulgar
> conversations from Barerra and Roldan.
> Additionally there is a disputed material
> issue of fact that Roldan asked Plaintiff to
> have sex with her and other couples.
> Moreover, the frequency of Barrera and
> Roldan's sexual comments is a disputed
> material issue of fact making summary judgment
> improper.

(<u>Id.</u> at 7 (citations omitted).)  Once again, Plaintiff is repeating
arguments that were presented to Judge Dunst in the first instance.

(<u>See</u> R&R at 24-25.)  As set forth above,[3] Judge Dunst

---

[3] <u>See</u> <u>supra</u> at 8.

quoted -- verbatim -- each of the events Plaintiff is averring to in her objections. (See id.) Thus, Judge Dunst's recommendation to dismiss Plaintiff's sex-based hostile work environment claim is reviewed for clear error.

For the same reasons the R&R's recommendation to dismiss the race-based hostile work environment claims must be affirmed, so must the sex-based hostile work environment claims under both Section 1981 and the NYSHRL. Consequently, the Court need not consider Plaintiff's objection as to the dismissal of her NYSHRL hostile work environment aiding and abetting claim in light of the absence of an underlying violation of the NYSHRL. Accordingly, Plaintiff's objections regarding the dismissal of her hostile work environment claims are OVERRULED.

D. Retaliation

Plaintiff's last objection focuses on her Section 1981 and NYSHRL retaliation claims.[4] (See id. at 8-9.) She argues the

---

[4] Plaintiff also objects to the dismissal of her retaliation claims on the grounds that Judge Dunst did "not consider the perception theory of retaliation from Plaintiff's brief." (See Obj. at 8 (citing Pl. Opp'n II at 28).) That is the extent of Plaintiff's vague and conclusory objection on this theory, and her brief in opposition to the Ballyshear Defendants' summary judgment motion hardly provides additional context. (See Pl. Opp'n II at 28 ("Courts have recognized the 'perception theory' of retaliation in instances where an employer mistakenly believes that an employee has engaged in protected activity, and that activity forms the basis for an adverse employment action against the employee. Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 571 (3d Cir. 2002).").) Although the Fogelman decision cited by Plaintiff was authored by the Third Circuit, courts within the Second Circuit

R&R overlooked Plaintiff's repeated complaints to Sygman about Kaczynski, Defendants' failure to investigate the complaints, the discriminatory treatment she endured after each complaint, and Defendants' failure to assist her with work authorization documents. (Id.)  Plaintiff also argues the R&R improperly weighed the evidence and inferred that Sygman held a meeting with Plaintiff to deter Plaintiff from reporting an alleged affair between Sygman and Kaczynski rather than to deter Plaintiff from making a hostile work environment claim. (Id. at 9.)  According to Plaintiff, "the evidence [she] submitted was sufficient to create a question of fact of whether the reasons for Defendants['] decision to fail to investigate [P]laintiff[']s complaints of hostile work environment was motivated by . . . Sygman's complaints against Plaintiff to Geller." (Id. at 8.)  The Court finds this statement by Plaintiff to be an admission that she is, once again, improperly attempting to rehash arguments that have already been presented to and ruled

_____

have found its reasoning persuasive and held that "claims of discrimination based on a mistaken 'perception' are cognizable . . . under Title VII." See Capek v. BNY Mellon, N.A., No. 15-CV-4155, 2016 WL 2993211, at *3 (S.D.N.Y. May 23, 2016); see also Grosso v. City Univ. of New York, No. 03-CV-2619, 2005 WL 627644, at *2-3 (S.D.N.Y. Mar. 16, 2005) (collecting cases). Nevertheless, Judge Dunst did not commit clear error by omitting a discussion of the "perception theory" in the R&R because: (1) Plaintiff failed to properly develop a cogent argument to advance this theory; and (2) the theory is inapplicable here, where Judge Dunst drew all inferences in Plaintiff's favor and considered her to be engaging in protected activities for purposes of his analysis. (See R&R at 21-23.)

upon by Judge Dunst in the first instance.  As such, Plaintiff's arguments concerning the dismissal of her retaliation claims are insufficient to trigger de novo review.  See Owusu v. New York State Ins., 655 F. Supp. 2d 308, 313 (S.D.N.Y. 2009) ("[O]bjections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review . . . .  Such objections 'would reduce the magistrate's work to something akin to a meaningless dress rehearsal.'" (quoting Vega v. Artuz, No. 97-CV-3775, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002))).

Here, Judge Dunst reviewed the elements applicable to retaliation claims under both Section 1981 and the NYSHRL as well as numerous adverse employment actions that Plaintiff claims to have endured (including those beyond the applicable time frame here).  (See R&R at 21-23, 25-26.)  Yet, Judge Dunst did not find there to be "any clear example of adverse harm or any clear connection [between these examples and] the purported complaints Plaintiff made."  (See R&R at 21-23, 25-26.)  Accordingly, the Court finds no clear error and Plaintiff's final objection is OVERRULED.

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Plaintiff's objections are OVERRULED, the R&R is ADOPTED IN ITS

ENTIRETY, and Defendants' motions for summary judgment are GRANTED. The Clerk of Court is directed to enter judgment accordingly and to mark this case CLOSED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March 22, 2023
        Central Islip, New York

22